Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERARD BORNEMANN, III<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ATLANTIC COUNTY DEPARTMENT OF PUBLIC SAFETY; MICHAEL FEDORKO; GERARD L. GORMLEY JUSTICE FACILITY a/k/a ATLANTIC COUNTY JUSTICE FACILITY; ATLANTIC COUNTY JAIL and DIVISION OF ADULT DETENTION; WARDEN DAVID KELSEY, ATLANTIC COUNTY JUSTICE FACILITY, COUNTY OF ATLANTIC a/k/a ATLANTIC COUNTY, NEW JERSEY; JOHN DOES 1-100 (being a fictitious designation), as Atlantic County Corrections Officers, and/or Sergeants, and/or Supervisors),<br><br>　　　　Defendants, | CIVIL ACTION NO.:<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

　　　　Plaintiff, GERARD BORNEMANN, III, by and through his attorney, the Law Office of Patrick Trainor, Esq., LLC, by way of Complaint, alleges and states the following:

## INTRODUCTION

　　　　Plaintiff, Gerard Bornemann, III (hereinafter "Plaintiff" or "Bornemann"), was a pre-trial detainee held in the Atlantic County Jail from April 2020 to in or about February 2022.  Plaintiff

1

has a well-documented history of mental disease, which is treated with medication. Defendants knew of Plaintiff's mental illness and the medications used to treat his illness, because they had obtained copies of his medical history records shortly after he was detained. While Plaintiff was detained, Plaintiff did not receive his prescribed medication, instead Defendants prescribed Plaintiff a cocktail of various medications and his mental health decompensated. Due decompensation, Plaintiff episodically acted out. In retaliation for Plaintiff's acting out, from May 27, 2020, through December 23, 2020, Defendants sadistically punished Plaintiff, by confining him in a painful, near permanent state of full mechanical restraint.

During this period Defendants continuously and forcibly confined Plaintiff in painful mechanical restraints for several excessive lengths of time, well beyond any rational or justifiable penological need, including several periods of painful confinement that lasted longer than seven (7) consecutive days each. From June 27, 2020, to July 24, 2020, Defendants forcibly confined Plaintiff in full mechanical restraints for *six hundred fifty-one (651) consecutive hours* the equivalent of approximately *27 consecutive days.* From November 2, 2020, to December 23, 2020, Defendants confined Plaintiff in mechanical restraints for *one thousand two hundred and nine (1,209) consecutive hours*, or the equivalent of slightly more than *50 consecutive days*.

Defendants unlawfully utilized mechanical restraints as instruments of torture, punishment, intimidation, and to retaliate against Plaintiff. Defendants ignored their obligation to immediately release Plaintiff once the initial reason to confine him had ceased to exist. Defendants continuously kept Plaintiff confined in full mechanical restraints after medical staff had logged Plaintiff's mental status as calm, cooperative, or compliant, well beyond the time the initial reason to confine him had ceased to exist.

## PARTIES

1. Plaintiff, GERARD BORNEMANN, III (hereinafter "Plaintiff" or "Bornemann") is a citizen of the United States and an individual who currently resides in Crosswicks, NJ.

2. At all times relevant herein, and upon information and belief, the ATLANTIC COUNTY DEPARTMENT OF PUBLIC SAFETY ("ACDPS") was and is a law enforcement division of defendant COUNTY OF ATLANTIC established and constituted under the laws of the State of New Jersey. The ATLANTIC COUNTY DEPARTMENT OF PUBLIC SAFETY has its office at 5033 English Creek Avenue, Egg Harbor Township, NJ 08234.

3. At all times relevant herein, and upon information and belief, defendant MICHAEL FEDORKO ("Fedorko") was the duly appointed head of the Atlantic County Department of Public Safety whose responsibilities included creating and implementing policies and procedures, ensuring implementation and adherence to well-settled best practices and supervision of other divisions and offices exercising functions related to law enforcement and emergency preparedness. Defendant Fedorko's place of business is located at 5033 English Creek Avenue, Egg Harbor Township, NJ 08234. He is being sued in his individual and official capacities.

4. At all times relevant herein, and upon information and belief, defendant ATLANTIC COUNTY DIVISION OF ADULT DETENTION ("ACAD") was and is the law enforcement division under the direction of defendant ATLANTIC COUNTY DEPARTMENT OF PUBLIC SAFETY and is responsible for the operation and maintenance of the adult detention facility known as the "ATLANTIC COUNTY JUSTICE FACILITY" to provide secure housing and related services for inmates held in custody at its place of business located at 5060 Atlantic Avenue, Mays Landing, NJ 08330.

5. At all times relevant herein, and upon information and belief, defendant DAVID KELSEY ("Kelsey") was and is the Warden of the Atlantic County Justice Facility, whose responsibilities include oversight of the operations, creating and implementing policies and procedures, official decision making, supervision of all correctional officers and custody personnel, and ensuring implementation and adherence to well-settled practices and procedures at the Atlantic County Justice Facility. Defendant Kelsey's place of business is located at 5060 Atlantic Avenue, Mays Landing, NJ 08330. He is being sued in his individual and official capacities.

6. At all times relevant herein, and upon information and belief, defendant COUNTY OF ATLANTIC (herein also referred to as "ATLANTIC COUNTY"), New Jersey is a political subdivision of the State of New Jersey and a municipal corporation pursuant to the laws of the State of New Jersey and at all times relevant hereto maintained budgetary oversight and operational oversight of the ATLANTIC COUNTY DEPARTMENT OF PUBLIC SAFETY. Pursuant to its County Charter, the County of Atlantic is responsible for indemnifying its employees for the cost of defense and all sums which the employee would be legally obligated to pay as compensatory damages or in settlement of claims brought against its employees for matters arising from or related to actions taken in the course of employment with the County of Atlantic. The County Counsel for the County of Atlantic has its principal place of business at 1333 Atlantic Avenue, Atlantic City, NJ 08401.

7. At all times relevant herein, and upon information and belief, defendants JOHN DOES 1-100 (being a fictitious designation) are employed as Correction Officers, Correction Sergeants and/or Supervisors at the Atlantic County Justice Facility by the Atlantic County Department of Public Safety. They are being sued in his/her individual and official capacities.

8. The above-named defendants are herein collectively referred to as "Defendant."

## JURISDICTION AND VENUE

9. This action arises under the United States Constitution and the laws of the United States and is brought pursuant to 42 U.S.C. § 1983 together with pendent state law claims.

10. The Court has jurisdiction over Plaintiff, Gerard Bornemann III's federal claims pursuant to 28 U.S.C. § 1331, as an action arising under the Constitution of the United States, and 28 U.S.C. 1343(a)(3), to redress the deprivation, under color of State law, of rights secured by the Constitution of the United States and over Plaintiffs pendent State law claims pursuant to 28 U.S.C. § 1367.

11. The Court has authority to grant costs and attorney's fees pursuant to 42 U.S.C. § 1988.

12. Venue is properly laid in the District Court of New Jersey pursuant to 28 U.S.C. § 1391(b), because one or all of the Defendants reside in this district, and the events giving rise to this claim occurred in this district.

13. Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide claims arising out of applicable State law.

## FACTS COMMON TO ALL CAUSES OF ACTION

14. Plaintiff, Gerard Bornemann III was a pre-trial detainee held in the Atlantic County Justice Facility ("ACJ") from April 5, 2020, until on or about February 6, 2022.[1]

15. As a child, Bornemann was diagnosed with Bipolar Disorder I, schizoaffective disorder, and attention deficit hyperactivity disorder ("ADHD"). Bornemann has been hospitalized on multiple occasions, both as a child and as an adult for treatment of his mental

---

[1] Bornemann was sentenced to State's Prison on February 7, 2022, and is presently detained in the Garden State Youth Correctional Facility, in Crosswicks, NJ.

disease, and he is prescribed medication to treat mental illness. ACJ knew Bornemann's mental illness history, previous hospitalizations, and treating medications, because they obtained copies of his medical history records shortly after he was detained.

16. Defendant ACJ utilizes mechanical restraints, such as the "emergency restraint chairs," full restraints, four-point restraints, handcuffs, flex cuffs, leg irons and shackles, waist/belly straps, to confine inmates they perceive to pose a threat to themselves or others.

17. Inmates placed in mechanical restraints are isolated and placed in solitary cells.

18. An inmate placed in an "emergency restraint chair" is strapped tightly at his waist with his hands cuffed behind his back and his legs shackled to the chair. Straps are tightly wrapped at various points across the inmate's body from head to toe to immobilize the inmate.

19. Upon information and belief, an inmate can only be confined in the "emergency restraint chair" when authorization has been received from the warden, shift commander, or a designee.

20. Upon information and belief, when an inmate is placed in the emergency restraint chair, he must be immediately examined by a qualified medical professional, and must be visually observed every 15 minutes, and at least once every two hours a qualified medical professional must assess the inmate's mental status, range of motion, bodily vital signs, circulation, hydration, toileting, and whether the inmate's skin is broken or discolored, and whether the inmate is eating. The results of the medical professional's assessment are logged. The data log includes the date and time the inmate was confined in restraints, the type of restraints the inmate was confined, the inmate's mental status, *i.e.*, calm, cooperative, aggressive, and records the inmate's vital signs, circulation, hydration, toileting.

21. Upon information and belief, once the initial reason to place the inmate in the emergency restraint chair has ceased to exist or has abated the inmate must be immediately removed from the emergency restraint chair.

22. Under no circumstances is the emergency restraint chair to be used as a disciplinary device, as a form of retaliation, or be used to threaten or intimidate an inmate. Doing so amounts to torture.

23. Upon information and belief, ACJ uses "full restraints," whereby an inmate is immobilized on a flat surface, usually a bed, by being tightly strapped to the bed with his arms and hands tightly cuffed to the bed, his legs shackled to the bed, and a waist strap tightly wrapped around his waist/chest to secure his midsection to the bed.

24. Upon information and belief, whenever an inmate is placed in full restraints, he must be immediately examined by a qualified medical professional, and must be visually observed every 15 minutes, and at least once every two hours a qualified medical professional must assess the inmate's mental status, range of motion, bodily vital signs, circulation, hydration, toileting, and whether the inmate's skin is broken or discolored, and whether the inmate is eating. The results of the medical professional's assessment are logged. The data log includes the date and time the inmate was confined in restraints, the type of restraints the inmate was confined, the inmate's mental status, *i.e.*, calm, cooperative, aggressive, and records the inmate's vital signs, circulation, hydration, toileting.

25. Upon information and belief, the inmate's entire period of restraint must be audio and video recorded, and a restrained inmate must be constantly supervised by a correction officer.

26. Upon information and belief, once the initial reason to place the inmate in full restraints has ceased to exist or has abated the inmate must be immediately removed from full restraints.

27. Under no circumstances are full restraints permitted to be used as a disciplinary device, as a form of retaliation, or be used to threaten or intimidate an inmate. Doing so amounts to torture.

28. During the relevant time period herein, Bornemann was not provided the medications he is prescribed to treat his mental illness and his health decompensated. At various times, he was insubordinate, fought with other inmates and staff, caused the destruction of ACJ's property, urinated and defecated on surfaces in his cell, and smeared his cell with urine and fecal graffiti.

29. Upon information and belief, ACJ considered Bornemann to be a nuisance and problematic inmate.

30. During the relevant period, on several occasions Bornemann had to be transported to the Emergency Department ("ER") at Atlantic City Medical Center ("ACMC") for Psychiatric In-Patient evaluations ("PIP").

31. Upon information and belief, and inspection of inmate restraint logs, defendants utilized mechanical restraints as a routine practice to punish Bornemann, and continuously kept him confined in restraints well beyond any rational or justifiable penological need.

32. Upon information and belief, ACJ routinely overruled medical staff recommendations to remove him from restraints and continued to confine Bornemann in full restraints after medical staff had logged his mental status as "calm," "compliant," or "cooperative," which mental statuses indicated that he must be immediately released.

33. Upon information and belief, ACJ used restraints to retaliate against Bornemann and as a punishment device by confining him in full restraints for excessive periods of time.

34. On June 27, 2020, at 2:45 a.m., ACJ forcibly confined Bornemann in full restraints and kept him restrained until July 2, 2020, at 8:55 a.m., at which time ACJ transferred him to the "emergency restraint chair" and confined him in the emergency restraint chair until he was transported in full restraints to the emergency department at ACMC for a PIP evaluation at 2:30 p.m.

35. Upon arrival at the ER at ACMC, Bornemann was covered in bruises all over and diagnosed with rhabdomyolysis,[2] a rare, life-threatening illness which is caused by blunt force trauma and causes muscle breakdown or muscle death. ACMC's nephrologist informed Bornemann that due to rhabdomyolysis, he was "accumulating a dangerous substance in his body that could cause his death due to kidney failure."[3] Bornemann was admitted to ACMC as a medical inpatient.

36. Defendants stood guard over Bornemann at ACMC and confined him in full restraints during the entirety of his nine (9) day inpatient stay.

37. Upon information and belief, Bornemann was released from ACMC back to ACJ on July 11, 2020, at 3:00 p.m., and immediately upon arriving back at ACJ, Defendants forcibly confined Plaintiff in full restraints until July 24, 2020, at 6:30 a.m.

38. Upon information and belief, Bornemann's only reprieve from full restraints during from June 27, 2020, to July 24, 2020, was the 5 hours and 35 minutes he was confined in the "emergency restraint chair" on July 2, 2020, prior to being transported to the ER at ACMC.

---

[2] *ClevelandClininc.org, Cleveland Clinic Health Library, Diseases and Conditions*, Rhabdomyolysis is a rare, life-threatening condition caused when there is a muscle breakdown or muscle death due to trauma or overexertion. https://my.clevelandclinic.org/health/diseases/21184-rhabdomyolysis  (last accessed June 4, 2022)
[3] Atlantic City Medical Center, Emergency Room note entered by Dr. Reva Dubin, dated July 6, 2020.

39. Upon information and belief, during Bornemann's continuous 27-days of confinement in full restraints, medical staff logged Bornemann's mental status as "calm" numerous times, including after 10 consecutive medical assessments over a 20-hour period on July 16, 2020, to July 17, 2020, but Defendants refused to release him and kept him confined in full restraints for an additional seven (7) days until July 24, 2020.

40. In sum, from 2:45 a.m. on June 27, 2020, until 6:30 a.m. on July 24, 2020, Defendants forcibly confined Bornemann in full restraints for 651 hours and 45 minutes consecutively, which is equivalent to slightly more than 27 consecutive days of confinement in full restraints.

41. Upon information and belief, Defendants forcibly confined Bornemann in full restraints for ten (10) consecutive days from August 13, 2020, until August 23, 2020. During this 10-day period, medical staff logged Bornemann's mental status as "calm" during multiple assessments, but Defendants refused to release him from full restraint confinement.

42. Upon information and belief, on September 4, 2020, Defendants confined Bornemann in the "emergency restraint chair" from at 5:15 p.m. until 9:20 p.m., double the maximum allowable time an inmate can be confined in the restrain chair, at which point Defendants transferred him to full restraints.

43. Upon information and belief, Defendants transferred Plaintiff to full restraints and kept him forcibly confined in full restraints until September 15, 2020. From September 4, 2020, to September 15, 2020, Defendants confined in Plaintiff in mechanical restrains for a 268 consecutive hours or slightly more than 11 days. During this period, medical staff logged Bornemann's mental status as "calm" following several assessments, but Defendants refused to release him.

44. On September 19, 2020, at 1:45 p.m., Defendants confined Plaintiff in the "emergency restraint chair" until September 20, at 3:20 a.m., at which point Defendants transferred Plaintiff to full restraints. Defendants confined Plaintiff in full restraints until September 30, 2020, at 1:00 p.m.

45. Beginning September 19, 2020, through September 30, 2020, Defendants forcibly confined Plaintiff in full restraints for 263 hours or slightly less than 11 days consecutively. During this period Defendants ignored medical staff logs that indicated Bornemann's mental status was "calm" and refused to release him from restraints.

46. Upon information and belief Bornemann was transferred from ACJ to Mercer County Correction Center on September 30, 2020, until November 2, 2020.

47. Upon information and belief, upon his return to ACJ on November 2, 2020, Defendants forcibly confined Bornemann in full restraints, and kept him confined in full restrains until December 23, 2020, at 3:40 a.m.

48. Defendants this period, Bornemann was painfully confined in full restraints for 1,209 consecutive hours, or slightly more than 50 days, intermittently interspersed with periods of confinement in the emergency restraint chair.

49. Upon information and belief, Defendants unlawfully utilized mechanical restraints as an instrument of torture and punishment, to intimidate and retaliate against Bornemann.

50. At all relevant times, Defendants were acting under the color of law.

## FIRST COUNT
(42 U.S.C. § 1983)

51. Plaintiff Gerard Bornemann, III, hereby repeats and realleges all the allegations set forth above as if set forth at length herein.

52. Persons who are being involuntarily held by the State or a subdivision thereof, are guaranteed equal protection of the laws and due process of law by the United States Constitution.

53. Pursuant to the Eighth Amendment of the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution there exists a prohibition against "cruel and unusual" punishment and the unnecessary and wanton infliction of pain against prisoners, pre-trial detainees and any individuals who are being held involuntarily by the State, including Bornemann.

54. Defendants Fedorko, Kelsey, and John Does 1-100 acted with deliberate indifference to Plaintiff Bornemann's aforementioned known constitutional and statutory rights when they unlawfully and unjustifiably tortured Plaintiff by confining him full restraints for several extremely extended periods of time, which extended well past the time that the initial need for restraints had passed, without giving consideration to the nature of the medical professional's recordation of his improved mental status, and well beyond any rational or justifiable penological need.

55. As a direct and proximate result of Defendants' actions, Plaintiff was caused severe and permanent injuries, and will endure and has endured severe pain and suffering, severe emotional trauma, humiliation and embarrassment, and will in the future require medical treatment.

56. Because Defendants Fedorko, Kelsey, and John Does 1-100 engaged in willful and wanton misconduct and/or reckless or callous indifference to Plaintiff's rights, the imposition of punitive damages against these Defendants is warranted.

**WHEREFORE**, Plaintiff Gerard Bornemann, III demands judgment against Defendants for compensatory damages, punitive damages, costs and reasonable attorney's fees, and such other relief as this Court deems just and proper.

## SECOND COUNT
(New Jersey State Constitutional Claims)

57. Plaintiff Gerard Bornemann, III hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

58. Pursuant to the Constitution of the State of New Jersey and N.J.S.A. 10:6-2, there exists a prohibition against "cruel and unusual punishment" and unnecessary and wanton infliction of pain against pre-trial detainees, prisoners, and individuals, who are being held involuntarily by the State or a subdivision thereof, including Bornemann.

59. Persons who are being involuntarily held by the State or a subdivision thereof, are guaranteed equal protection of the laws and due process of law by the New Jersey Constitution and N.J.S.A. 10:6-2.

60. Defendants Fedorko, Kelsey, and John Does 1-100 acted with deliberate indifference to Bornemann's aforementioned known constitutional and statutory rights when they unlawfully and unjustifiably tortured Plaintiff by confining him in full restraints for several extremely extended periods of time, which extended well past the time that the initial need for restraints had passed, without giving consideration to the medical professional's recordation of his improved mental status, and well beyond any rational or justifiable penological need.

61. As a direct and proximate result of Defendants' actions, Plaintiff was caused severe and permanent injuries, and will endure and has endured severe pain and suffering, severe emotional trauma, humiliation and embarrassment, and will in the future require medical treatment.

62. Because Defendants Fedorko, Kelsey, and John Does 1-100 engaged in willful and wanton misconduct and/or reckless or callous indifference to Plaintiff's rights, the imposition of punitive damages against these Defendants is warranted.

**WHEREFORE**, Plaintiff Gerard Bornemann, III demands judgment against Defendants for compensatory damages, punitive damages, costs and reasonable attorney's fees, and such other relief as this Court deems just and proper.

### THIRD COUNT
(Conspiracy)

63. Plaintiff Gerard Bornemann, III hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

64. Defendants acted in concert to directly deprive Bornemann the rights and privileges protected by the United States Constitution and the Constitution of the State of New Jersey and N.J.S.A. 10:6-2, including deprivation equal protection of law, substantive due process, and subjected him to cruel and unusual punishment.

65. The actions of Defendant's Fedorko, Kelsey, and John Does 1-100, Atlantic County Department of Public Safety, County of Atlantic and Atlantic County Division of Adult Detention amounted to a civil conspiracy to directly deprive Plaintiff of equal protection of the law, denied him due process of the law, and subjected him to cruel and unusual punishment in violation of Constitution of the State of New Jersey and N.J.S.A. 10:6-2.

66. As a direct and proximate result of Defendants' actions, Plaintiff was caused severe and permanent injuries, and will endure and has endured severe pain and suffering, severe emotional trauma, humiliation and embarrassment, and will in the future require medical treatment.

67. Because Defendants Fedorko, Kelsey, and John Does 1-100 engaged in willful and wanton misconduct and/or reckless or callous indifference to Plaintiff's rights, the imposition of punitive damages against these Defendants is warranted.

**WHEREFORE**, Plaintiff Gerard Bornemann, III demands judgment against Defendants for compensatory damages, punitive damages, costs, reasonable attorney's fees, and such other relief as this Court deems just and proper.

### FOURTH COUNT
(42 U.S.C. § 1985)

68. Plaintiff Gerard Bornemann, III hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

69. The actions of Defendant's Fedorko, Kelsey, and John Does 1-100 amounted to a civil conspiracy to directly deprive Plaintiff of equal protection of the law, denied him due process of the law, and subjected him to cruel and unusual punishment in violation of the United States Constitution and 42 U.S.C. § 1985.

70. As a direct and proximate result of Defendants' actions, Plaintiff was caused severe and permanent injuries, and will endure and has endured severe pain and suffering, severe emotional trauma, humiliation and embarrassment, and will in the future require medical treatment.

71. Because Defendants Fedorko, Kelsey, and John Does 1-100, Atlantic County Department of Public Safety, County of Atlantic and Atlantic County Division of Adult Detention engaged in willful and wanton misconduct and/or reckless or callous indifference to Plaintiff's rights, the imposition of punitive damages against these Defendants is warranted.

**WHEREFORE**, Plaintiff Gerard Bornemann, III demands judgment against Defendants for compensatory damages, punitive damages, costs, reasonable attorney's fees, and such other relief as this Court deems just and proper.

## **FIFTH COUNT**
(Policy and Practice/Monell liability)

72. Plaintiff Gerard Bornemann, III hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

73. Defendants Fedorko, Kelsey, Atlantic County Department of Public Safety, County of Atlantic and Atlantic County Division of Adult Detention acted with deliberate indifference to Bornemann's aforementioned constitutional rights by authorizing or otherwise permitting a policy and custom of corrections and abuse of prisoner rights as aforesaid.

74. Because *inter alia* they failed to train and supervise their employees, were grossly negligent in the supervision of their subordinates, and created and/or permitted a policy or custom of conduct, under which they knew unconstitutional practices occurred, and failing to take remedial actions to prevent Bornemann's extreme and torturous confinement in mechanical restrains, Defendants Fedorko, Kelsey, and John Does 1-100, Atlantic County Department of Public Safety, County of Atlantic and Atlantic County Division of Adult are liable to Plaintiff for damages.

75. As a proximate result of Defendants Fedorko, Kelsey, Atlantic County Department of Public Safety, County of Atlantic and Atlantic County Division of Adult Detention's unlawful conduct, Bornemann was deprived of his Constitutional and statutory rights and was subjected to cruel and unusual punishment, torture, denied due process of law, denied equal protection of the law, and was unlawfully involuntarily restrained for extreme periods of

time without adequate basis, and caused to suffer physical, mental, and emotional trauma and humiliation and embarrassment.

76. Because Defendants engaged in willful and wanton misconduct and/or reckless or callous indifference to Plaintiff's rights, the imposition of punitive damages against these Defendants is warranted.

77. **WHEREFORE**, Plaintiff Gerard Bornemann, III demands judgment against Defendants for compensatory damages, punitive damages, costs, reasonable attorney's fees, and such other relief as this Court deems just and proper

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable herein.

LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC

Dated: June 7, 2022

_____
PATRICK TRAINOR
*Attorney for Plaintiff*

## CERTIFICATION

Pursuant to the requirements of L. Civ. R. 11.2, I, the undersigned, do hereby certify to the best of my knowledge, information and belief, that except as hereinafter indicated, the subject matter of the controversy referred to in the within pleading is not the subject of any other cause of action, pending in any other Court, or of a pending Arbitration Proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC

Dated: June 7, 2022

_____
PATRICK TRAINOR
*Attorney for Plaintiff*