*NOT FOR PUBLICATION

**ECF 4**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

GERARD BORNEMANN, III,

Plaintiff,

v.

ATLANTIC COUNTY DEP'T OF PUBLIC SAFETY, et al.,

Defendants

CIV. NO. 22-3562 (RMB-AMD)

**OPINION**

Patrick Trainor, Esq.
Law Office of Patrick Trainor, ESQ., LLC
19 Union Avenue, Suite 201
Rutherford, NJ 07070
On behalf of Plaintiff

Murianda L. Ruffin, Assistant County Counsel
Atlantic County Law Department
1333 Atlantic Avenue. 8th Floor
Atlantic City, NJ 08401
On behalf of Defendants Atlantic County Department of Public Safety, Atlantic County Jail and Division of Adult Detention, Atlantic County Justice Facility, County of Atlantic, Michael Fedorko, and Warden David Kelsey

**RENÉE MARIE BUMB**, Chief United States District Judge

This matter comes before the Court upon Defendants'[1] motion to dismiss the complaint (Docket No. 4), and Plaintiff's opposition brief. (Docket No. 5.) The Court will decide the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court will grant Defendants' motion to dismiss in part.

## I. THE COMPLAINT

On June 7, 2022, Plaintiff filed a complaint asserting jurisdiction under 42 U.S.C. § 1983, with pendent state law claims. Plaintiff brings claims against Defendants Atlantic County Department of Public Safety, Michael Fedorko, Gerard L. Gormley Justice Facility a/k/a Atlantic County Jail ("ACJ"), Atlantic County Division of Adult Detention, Warden David Kelsey, County of Atlantic a/k/a Atlantic County, New Jersey, and John Does 1-100. Plaintiff was a pretrial detainee in the Atlantic County Justice Facility ("ACJ") from April 5, 2020, until on or about February 6, 2022. (Compl., Docket No. 1, ¶ 14.) Atlantic County Justice Facility was aware of Plaintiff's treatment and hospitalizations, as a child and adult, for Bipolar Disorder I, Attention Deficit Hyperactivity Disorder ("ADHD"), and schizoaffective disorder. (*Id.*, ¶ 15.) Plaintiff's mental health decompensated when ACJ failed to provide him with his medications that were prescribed before he was detained. (*Id.*, ¶ 28.) At various times, Plaintiff was insubordinate, fought with inmates and staff, and

[1] Defendants here do not include John Does 1-100.

smeared urine and feces on surfaces in his cell. (Compl., Docket No. 1, ¶ 28.) On several occasions, Plaintiff was transported to Atlantic City Medical Center for psychiatric inpatient evaluations. (*Id.*, ¶ 30.)

ACJ has policies or practices for use of an "emergency restraint chair" and "full restraints." (*Id.*, ¶¶ 19-27.) The policies were frequently not followed when the restraints were used on Plaintiff. (*Id.*, ¶ 31.) Inmates placed in an "emergency restraint chair" are isolated and strapped tightly at the waist, with hands cuffed behind the back and legs shackled to the chair. Straps are tightly wrapped at various points across the inmate's body from head to toe for immobilization. (*Id.*, ¶¶ 17, 18.) ACJ uses "full restraints," whereby an inmate is tightly strapped to a bed with his arms and hands tightly cuffed to the bed, his legs shackled to the bed, and a waist strap tightly wrapped around his waist/chest to secure his midsection to the bed. (*Id.*, ¶ 23.)

Defendants used mechanical restraints as a routine practice to punish Plaintiff, keeping him restrained well beyond any rational or justifiable penological need. (*Id.*, ¶ 31.) ACJ routinely overruled medical staff recommendations to remove the restraints when Plaintiff was calm. (*Id.*, ¶ 32.)

From June 27 through July 2, 2020, Plaintiff was continuously maintained in full restraints until he was transported to Atlantic County Medical Center for a psychiatric evaluation. (*Id.*, ¶ 34.) Upon admission, Plaintiff was covered with bruises. (*Id.*, ¶ 35.) He was diagnosed with rhabdomyolysis, a rare, life-threatening illness which is caused by blunt force trauma and causes muscle breakdown or muscle death. (*Id.*) Defendants kept Plaintiff in full restraints for his 9-day stay in the hospital. (*Id.*, ¶

36.) Immediately upon returning to ACJ from the hospital on July 11, 2020, Plaintiff was placed in full restraints until July 24, 2020. (Compl., Docket No. 1, ¶ 37.) Despite Plaintiff's mental status being calm for a 20-hour period from July 16-17, 2020, Defendants kept him in full restraints until July 24, 2020. (*Id.*, ¶ 39.)

Defendants continued to forcibly confine Plaintiff in the emergency restraint chair and/or full restraints for the following periods: August 13, 2020 until August 23, 2020; September 4, 2020 to September 15, 2020; September 19, 2020 to September 30, 2020; and November 2, 2020 to December 23, 2020. (Compl., ¶¶41, 43, 44, 47.)

In count one of the complaint, Plaintiff alleges Defendants violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983. (*Id.*, ¶ 51-56.) In count two of the complaint, Plaintiff alleges Defendants violated the Eighth and Fourteenth Amendments of the New Jersey Constitution, in violation of the New Jersey Civil Rights Act ("NJCRA" or "CRA") N.J.S.A. 10:6-2. In count three of the complaint, Plaintiff alleges Defendants conspired to deprive him of his rights under the United States and New Jersey Constitutions, and the NJCRA. In count 4 of the complaint, Plaintiff alleges Defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985. In count 5 of the complaint, Plaintiff alleges Defendants Fedorko, Kelsey, Atlantic County Department of Public Safety, County of Atlantic and Atlantic County Division of Adult Detention acted with deliberate indifference to Plaintiff's constitutional rights by authorizing or otherwise permitting a policy and custom of

abuse of prisoner rights, and by failing to train or supervise their employees. (*Id.*, ¶ ¶ 73, 74.)

## II. THE PARTIES' ARGUMENTS

Defendants argue that Plaintiff fails to state a *Monell* claim because he does not plead any facts regarding a municipal policy or custom. (Motion to Dismiss, Docket No. 4 at 3.) Instead, Plaintiff simply parrots the legal standard for municipal liability under § 1983. (*Id.* at 5.) To demonstrate deliberate indifference where a plaintiff claims failure to train or supervise, the plaintiff must ordinarily show a "pattern of similar constitutional violations by untrained employees." (*Id.* at 6, quoting *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir.2014) (quoting *Connick*, 131 S. Ct. at 1360). Defendants assert that Plaintiff has failed to allege any sort of pattern of similar constitutional violations. (*Id.*) Further, Defendants maintain that Plaintiff fails to state a *Monell* claim because he does not allege specific conduct by an official policymaker involved in the formation of a custom or policy. (*Id.* at 6-7.)

Next, Defendants contend that Plaintiff fails to assert a factual basis for a supervisory liability claim against either Michael Fedorko or David Kelsey. (*Id.* at 8.) Plaintiff does not allege that Michael Fedorko and David Kelsey had any personal involvement in the alleged violations of his constitutional rights. (*Id.*) Vicarious liability cannot form a basis for liability under 42 U.S.C. § 1983. (*Id.*) A defendant in

a civil rights action must have had some personal involvement in committing the alleged violation. (Mot. to Dismiss, Docket No. 4 at 8.)

Defendants likewise argue that Plaintiff fails to state a claim under the New Jersey State Constitution and New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2. (*Id.* at 9.) Courts construe the NJCRA, which was modeled after § 1983, in terms nearly identical to its federal counterpart. (*Id.*, citing *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016).

Finally, Defendants maintain that although local governmental units may constitute 'persons' against whom suit may be lodged under 42 U.S.C. § 1983, governmental sub-units are not distinct from the municipality of which they are a part. (*Id.*) Thus, the County Department of Public Safety, the Gerard L. Gormley Justice Facility a/k/a Atlantic County Justice Facility, the Atlantic County Jail, and the Division of Adult Detention are governmental sub-units that are not proper parties under § 1983. (*Id.*) Defendants did not specifically address Plaintiff's conspiracy claims in counts four and five of the complaint.

In opposition to Defendants' motion to dismiss, Plaintiff submits that the complaint was sufficiently pled to withstand Rule 12(b) scrutiny. (Pl's Opposition Brief, Docket No. 5 at 6.) Plaintiff explains that this action does not concern a single isolated incident of a detainee restrained in excess of time limits proscribed by policy, it concerns excessive confinement for weeks at a time, well after Plaintiff no longer posed a risk to himself or others, and despite documented changes in his mental status that warranted his release from restraint. (*Id.*) Plaintiff was strapped in painful

restraints across all "tours of duty" under supervision of several commanding shift officers. (Pl's Opposition Brief, Docket No. 5 at 6.) Plaintiff contends that the complaint alleges sufficient facts to show that defendants were improperly trained in the use of mechanical restraints, as evidenced by Plaintiff's excessive periods of confinement, and defendants' refusal to release Plaintiff after medical staff indicated he must be released. (*Id.*)

Plaintiff asserts that his restraint was so unreasonably excessive, it is implausible that ACJ supervisors were unaware. (*Id.* at 12.) Defendants use restraint flow sheets to document a detainee's time in restraints, and Plaintiff's records contain at least 81 pages documenting a minimum of 108 days in restraints. (*Id.*, citing Compl., ¶¶ 20, 24). Plaintiff asserts this is sufficient to establish a custom of violating his constitutional rights, and an inference of supervisory and municipal liability.

## III. DISCUSSION

### A. Standard of Law

#### 1. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion to dismiss, courts must accept all well-pleaded facts as true, while disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). A complaint survives

a motion to dismiss if the court determines that the facts alleged in the complaint show that the plaintiff has "a plausible claim for relief." *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950.) On a motion to dismiss under Rule 12(b)(6), the Court asks only whether Plaintiff has pled "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of his claims. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

**2. Eighth Amendment**

"[T]he Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners[.] [I]t applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977) (fourth alteration in original).

**3. Fourteenth Amendment Excessive Force**

The excessive use of force test for § 1983 claims is applicable where an inmate was subjected to mechanical restraints after being subdued. *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015). "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all[.]" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021). Therefore, to state an excessive force claim under the Fourteenth Amendment Due Process Clause, "'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'" *Id.* (quoting *Kingsley v.*

*Hendrickson*, 576 U.S. 389, 396–97 (2015) (emphasis in original). In making the reasonableness determination, courts must consider circumstances such as:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 194–95 (3d Cir. 2021) (quoting *Kingsley*, 576 U.S. at 397.) Courts must analyze the circumstances "from the perspective of a reasonable officer on the scene." *Id.* at 195.

**4. Fourteenth Amendment Equal Protection Clause**

"The Fourteenth Amendment's Equal Protection Clause admonishes that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018). "The Equal Protection Clause requires that all people similarly situated be treated alike." *Whitehead v. Wetzel*, 720 F. App'x 657, 662 (3d Cir. 2017) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (1990) (citation omitted). Alternatively, "[t]o state a claim under a class of one theory, 'a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally,

and (3) there was no rational basis for the difference in treatment.'" *Newark Cab Ass'n,* 901 F.3d at 156 (quoting *Hill v. Borough of Kuztown*, 455 F.3d 225, 239 (3d Cir. 2006.)

**5. Section 1983 *Monell* Liability**

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Thus, a municipality can only be liable under § 1983 when the municipality itself causes the alleged constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 692-95 (1978). A municipality may be liable under § 1983 if its policy or well-settled custom causes a constitutional injury. *Id.* at 694. "Liability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees.'" *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)). "[I]f alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). "A plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries." *Est. of Roman,* 914 F.3d at 798 (citation omitted). Typically, proximate cause is established by pleading the defendant "had knowledge of 'similar unlawful

conduct in the past, ... failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990)).

"Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact.'" *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("Canton ")). Plaintiffs must identify the deficiency in a municipality's program and "the deficiency in training [must have] actually caused" the constitutional violation. *Id.* (quoting *Canton*, 489 U.S. at 391)). "A policy or custom may be inferred where the policymaker has failed to act affirmatively at all, but "the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 438 (E.D. Pa. 2015) (internal quotations and citations omitted). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* (citing *Connick v. Thompson*, 563 U.S. 51 (2011)). To demonstrate deliberate indifference where a plaintiff claims failure to train, the plaintiff must ordinarily show a "pattern

of similar constitutional violations by untrained employees." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick*, 131 S. Ct. at 1360).

**6. Section 1983 Supervisory Liability**

Under § 1983, supervisors "are liable only for their own unconstitutional actions." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *cert. granted, judgment rev'd sub nom. on other grounds, Taylor v. Barkes*, 575 U.S. 822 (2015)). "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* Supervisors may be liable if, with the requisite level of intent for the constitutional violation alleged, they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Supervisors may also be liable "if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct." *Id.* (citations omitted).

**7. New Jersey Constitutional Claims and the NJCRA**

The NJCRA was modeled on 42 U.S.C. § 1983, and "created a private cause of action for violations of civil rights secured by the federal and New Jersey Constitutions." *Cruz v. Camden Cnty. Police Dep't*, 466 N.J. Super. 1, 9–10 (App. Div.), *cert. denied*, 247 N.J. 400, (2021) (citing *Tumpson v. Farina*, 218 N.J. 450, 474 (2014)

(additional citations omitted)). "Thus, in interpreting the NJCRA, New Jersey courts often look to federal cases analyzing § 1983." *Id.* For instance, "[t]he legal principles governing the liability of a municipality under the CRA and § 1983 are essentially the same." *Winberry Realty P'ship v. Borough of Rutherford*, 247 N.J. 165, 190, 253 A.3d 636, 650 (2021) (*citing e.g., Ingram v. Township of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012)).

For supervisory liability under the CRA, a plaintiff must plead facts showing that "(1) the supervisor ... failed to supervise the subordinate official; (2) a causal link exists between the failure to ... supervise and the violation of the plaintiff's rights; and (3) the failure to ... supervise amounts to deliberate indifference" or recklessness." *Schneider v. Simonini*, 163 N.J. 336, 373–74 (2000) (quoting *Hinshaw v. Doffer,* 785 *F.*2d 1260, 1263 (5th Cir. 1986)). The supervisor must have been "aware of facts from which an inference could be drawn that the subordinate was acting in an unconstitutional manner that carried substantial risk of causing serious harm." *Id.* (quoting *Canton v. Harris,* 489 *U.S.* 378, 389 (1989) (additional citations omitted).

**B. Analysis**

**1. The Eighth Amendment**

Plaintiff alleges that he was a pretrial detainee at all relevant times alleged in the complaint. Therefore, the Eighth Amendment, which applies only to convicted and sentenced prisoners, is inapplicable. The Eighth Amendment claims under § 1983 and the NJCRA will be dismissed with prejudice.

**2. Defendants Atlantic County Department of Public Safety, Gerard L. Gormley Justice Facility a/k/a Atlantic County Jail and Atlantic County Division of Adult Detention**

Plaintiff alleges excessive force by improper use of mechanical restraints violated his rights under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, the New Jersey Constitution, and the NJRCA. While a municipality may be liable under § 1983, departments or divisions of local governments are not separate legal entities that may be sued under § 1983. *See*, *Cruz v. City of Pottsville*, No. 3:21-CV-00283, 2022 WL 2733207, at *5 (M.D. Pa. May 19, 2022), *report and recommendation adopted*, No. 3:21-CV-283, 2022 WL 2132844 (M.D. Pa. June 14, 2022) (collecting cases); *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (affirming dismissal of § 1983 claim "[b]ecause the Police Department is merely an arm of the Township[.]") Therefore, Defendants' motion to dismiss all § 1983 claims against Atlantic County Department of Public Safety, Gerard L. Gormley Justice Facility a/k/a Atlantic County Jail and Atlantic County Division of Adult Detention will be granted. Applying the legal principles governing § 1983, the NJCRA claims against these Defendants will also be dismissed with prejudice.

**3. Supervisory Liability for Excessive Force under § 1983 and the NJCRA Against Defendants Michael Fedorko, Warden David Kelsey, and Municipal Liability of Atlantic County**

Failure to train or supervise claims are generally considered subcategories of policy or practice liability. *Barkes*, 766 F.3d at 316. Plaintiff alleges Michael Fedorko is the head of the Atlantic Department of Public Safety, whose responsibilities include

creating and implementing policies and procedures, and ensuring supervision of other divisions and offices exercising functions related to law enforcement. (Compl., Docket No. 1, ¶ 3.) Plaintiff alleges Atlantic County, through its departments and subdivisions, is responsible for the operation of Atlantic County Jail. (*Id.*, ¶¶ 2, 4, 6.) Plaintiff alleges David Kelsey is Warden of Atlantic County Jail, whose responsibilities include "creating and implementing policies and procedures, official decision making, supervision of all correctional officers and custody personnel, and ensuring implementation and adherence to well-settled practices and procedures at the Atlantic County Justice Facility." (Compl., Docket No. 1, ¶ 5.) These allegations are sufficient, at the motion to dismiss stage, to allege that Defendants Fedorko, Kelsey and Atlantic County are personally involved in creating and implementing training and other procedures for Atlantic County Jail.

Plaintiff alleges he was repeatedly placed in mechanical restraints in violation of Atlantic County Jail's policies or procedures for use of those restraints, every month from June through December 2020, excluding October when he was confined in Mercer County Corrections Center. The allegations in the complaint support a reasonable inference that recurrent harm to Plaintiff from excessive force in the use of mechanical restraints was so predictable that Defendant Fedorko's and Kelsey's failure to train Atlantic County Jail staff in the procedures and limitations for use of mechanical restraints were the proximate cause of Plaintiff's injuries. Because the same standard applies for holding Atlantic County liable as the municipality responsible for policies and practices at Atlantic County Jail, Plaintiff's Fourteenth

Amendment excessive force claims under § 1983 and the NJRCRA may proceed against Atlantic County as well.

Plaintiff also raises Fourteenth Amendment Equal Protection claims against Defendants Fedorko, Kelsey and Atlantic County. Plaintiff has not alleged how a policy or custom caused Plaintiff to be treated differently than similarly situated inmates, either for the purpose of discrimination, or as "a class of one", without a rational basis. Therefore, the Court will dismiss the Fourteenth Amendment Equal Protection claims under § 1983 and the NJCRA against these defendants, without prejudice.

Finally, although Defendants have not specifically addressed the conspiracy claims in counts 4 and 5 of the complaint, Defendants seek to dismiss all supervisory and *Monell* claims for failure to state a claim. Plaintiff has not alleged that any policy or custom resulted in a conspiracy to deprive Plaintiff of his constitutional rights or that Defendants Fedorko and Kelsey were personally involved in a conspiracy to deprive Plaintiff of his constitutional rights. Therefore, the Court will dismiss the conspiracy claims against Defendants Fedorko, Kelsey and Atlantic County without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss in part and dismiss all Eighth Amendment claims under § 1983 and the NJCRA with prejudice. The Court will dismiss all Fourteenth Amendment Equal Protection claims and conspiracy claims under §§ 1983 and 1985, and the NJCRA

without prejudice. The Court will dismiss all § 1983 and NJCRA claims against Defendants Atlantic County Department of Public Safety, Gerard L. Gormley Justice Facility a/k/a Atlantic County Jail and Atlantic County Division of Adult Detention with prejudice.

An appropriate Order follows.

Date: **February 28, 2023**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**Chief United States District Judge**