<u>*NOT FOR PUBLICATION</u>

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | | |
|---|---|---|
| GERARD BORNEMANN, III, | : | |
| Plaintiff, | : | CIV. NO. 22-3562 (RMB-AMD) |
| v. | : | **OPINION** |
| ATLANTIC COUNTY DEP'T OF PUBLIC SAFETY, et al., | : | |
| Defendants | : | |

**APPEARANCES:**

Patrick Trainor, Esq.
Law Office of Patrick Trainor, ESQ., LLC
19 Union Avenue, Suite 201
Rutherford, NJ 07070
     On behalf of Plaintiff

Murianda L. Ruffin, Assistant County Counsel
Atlantic County Law Department
1333 Atlantic Avenue, 8th Floor
Atlantic City, NJ 08401
     On behalf of Defendants

**RENÉE MARIE BUMB**, Chief United States District Judge

## I.    INTRODUCTION

Plaintiff Gerard Bornemann, III ("Plaintiff") initiated this action on or about June 7, 2022, by filing a civil rights complaint against the County of Atlantic and various officials and employees of the Atlantic County Jail ("Atlantic County Justice Facility" or "ACJF"). (Compl., Dkt. No. 1.) On February 28, 2023, this Court granted, in part, and denied, in part, Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Opinion and Order, Dkt. Nos. 7, 8.) In relevant part, Plaintiff proceeded on his claim that Defendants Warden David Kelsey, Public Safety Department Head Michael Fedorko and County of Atlantic (collectively the "Defendants") violated his Fourteenth Amendment right to be free from excessive use of force while confined in ACJF. In support of this claim, Plaintiff alleges that he was repeatedly punished by the misuse of mechanical restraints, in violation of ACJF's policies and procedures, from May 2020 through December 2020. (Compl., Dkt. No. 1 at 2.) Defendants deny that the use of restraints was for disciplinary purposes, but for security reasons given Plaintiff's behavior. Although the hearing did not delve into the nature of the concerns the prison faced, one example was discussed. Plaintiff admitted to throwing human waste.[1]

---

[1] Q. Okay. You would agree with me that at some point during your time at the Atlantic County Justice Facility, you did throw human waste at somebody, correct?

  A. It never hit anyone, no. It was just at the wall.

  Q. Okay.

Under the Prisoner Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Defendants filed a motion for summary judgment, asserting that Plaintiff failed to exhaust administrative remedies before filing his civil rights complaint.  (Defs' Mot. S.J., Dkt. No. 19.)  Plaintiff filed a brief in opposition to summary judgment (Pl's Opp. Brief, Dkt. No. 20), and Defendants filed a reply brief in support of summary judgment.  (Defs' Reply Brief, Dkt. No. 21.)

For the reasons that follow, the Court finds that Plaintiff has failed to exhaust his administrative remedies and summary judgment will be granted in favor of Defendants.

## II. PLRA EXHAUSTION

When a prisoner challenges the conditions of his confinement, 42 U.S.C. § 1997e(a), "mandates exhaustion of all available administrative remedies before bringing a lawsuit." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 304 (3d Cir.

---

THE COURT:  So you understood that the institution
   viewed these instances as security concerns?

THE WITNESS:  Correct.

Transcript of hearing, March 27, 2024, docketed at ECF 42 (hereinafter "Tr."), page 104.

3

2020). Proper exhaustion is required, which means a plaintiff must complete the administrative review process in accordance with the individual prison's requirements. *Id.* at 305 (citations omitted).

A defendant has the burden to prove the affirmative defense of failure to exhaust. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)). There is one exception to the PLRA's exhaustion requirement, prisoners need only exhaust those administrative remedies that are available to them. *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1858, (2016)). If a remedy

> operates as a simple dead end[,] ... is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[] *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (internal quotation marks omitted)[,]

the remedy is unavailable and need not be exhausted. *Downey*, 968 F.3d at 305. "[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013).

In essence, Defendants contend that Plaintiff received ACJF's Inmate Handbook, which contains ACJF's grievance policy and procedures. (Defs' Mot. S.J., Dkt. No. 19 at 13.) The policy requires that inmates must first file an inmate

request form[2] and try to resolve their issues. (*Id.*) If an inmate is not satisfied with the results, his second step is to file a grievance. (*Id.*) The inmate request forms and grievance forms are readily available in ACJF. Defendants allege that although Plaintiff was aware of the administrative procedures and had filed numerous inmate request forms while incarcerated in the past, he never filed a single inmate request form or grievance for the relevant time period relating to the use of restraints.

Plaintiff argued that no administrative remedies were available to him. (Pl's Opp. Brief, Dkt. No. 20 at 11.) Plaintiff submits that he was restrained in mechanical restraints for extended lengths of time because he was classified as chronic violator and subject to multiple disciplinary actions. (*Id.*) According to the Inmate Handbook, prisoners may not grieve disciplinary matters or classification status. (*Id.* at 11-12.) Plaintiff further argues that he did not take advantage of the inmate resolution process because he had a reasonable fear of being kept in mechanical restraints in retribution for filing a grievance. (Pl's Response to Defs' Statement of Material Facts, Dkt. No. 20-1 at 5.)

## III. BENCH TRIAL ON PLRA EXHAUSTION

On March 27, 2024, this Court conducted a bench trial to determine disputed facts on the issue of PLRA exhaustion. The Court received testimony from three

---

[2] The Inmate Handbook refers to the form used to begin the administrative resolution process as "Inmate Resolution Form." The parties have also referred to the form as the "Inmate Request Form."

witnesses: Lieutenant Patrick Robinson, Deputy Warden Bruce Carber, and Plaintiff Bornemann. The Court's analysis and findings follow.

Lieutenant Patrick Robinson, Commander of Internal Affairs for ACJF, testified on behalf of Defendants. The Inmate Handbook describes ACJF's administrative remedy program. (Tr. at 16, Dkt. No. 42.) In describing the terms of the inmate resolution and grievance process, the 15th edition of the Inmate Handbook is unchanged from the 14th edition. (Tr. at 14-15, 31-32.) According to Lieutenant Robinson and Deputy Warden Carber, ACJF's grievance policy involves two steps, filing an inmate resolution form through the chain of command, followed by filing a grievance form if the issue is not resolved. (Tr. at 16, 62.) Custody staff provide resolution forms to inmates upon request. (Tr. at 22.) Inmates can also seek help from medical staff in filing resolution or grievance forms or otherwise making a complaint. (*Id.*) Deputy Warden Carber testified that staff may help an inmate file a resolution form or grievance form while an inmate is in mechanical restraints. (Tr. at 64.) Lieutenant Robinson testified that there is no time limit on when an inmate must file a resolution form. (Tr. at 26.) Therefore, Plaintiff could have filed an inmate resolution form after mechanical restraints were removed. (*Id.*)

Lieutenant Robinson acknowledged that the Inmate Handbook states "Certain matters may not be grieved." (Tr. at 33-34.) This includes "disciplinary matters taken against the grieving inmate or any other inmates" and housing assignments and classification status. (*Id.* at 34-35.) The Handbook states:

6

### INMATE GREIVANCES [sic]

a. A grievance procedure has been established to protect both inmates and staff regarding issues in the facility.

b. All grievances are to be first handled informally through the chain of command (i.e.: Officer, Sergeant, Lieutenant/Shift Commander) via an inmate resolution form. After all attempts to handle the matter informally are exhausted, with no mutually agreed upon resolution, the matter can then be formally grieved to the Warden/Director's office. A grievance form can be obtained from the Lieutenant after the final step of the resolution form.

c. A formal grievance shall be filed only using the grievance form; no other forms will be accepted. The grievance form must be filled out completely with all requested information supplied. Incomplete forms shall be denied; an inmate may not submit more than one grievance on the same issue within a 15 day period. The grievance form must be submitted with your resolution form to show that the informal process was met. Any grievances submitted without an attached resolution form will be rejected until informal process is followed. The grievance form shall be submitted in the inmate service drop box located in each housing unit. You will receive a copy of your submitted grievance once received.

d. **Certain matters may not be grieved. These matters are as follows:**

   i) Matters out of the facilities control (probation, sentences, court)

   ii) *Disciplinary* matters taken against the grieving inmate or any other inmates.

(Defs' Ex. H, Dkt. No. 19-1 at 31 (emphasis added)).

An inmate's placement in mechanical restraints is not a punishment for a disciplinary charge, and it is not a classification status. (Tr. at 20.) If the inmate no longer poses a security threat, the restraints would be removed. (Tr. at 45.) Thus, an inmate is able to file a grievance about being placed in mechanical restraints. (*Id.*) Inmates can obtain grievance and resolution forms from staff. (Tr. at 21-22.)

Relevant here, the determination of whether an inmate is a "chronic violator," one whose repeated behavior poses a danger to himself, others or property, is made collaboratively by members of the administration. (Tr. at 25.) The fact that Plaintiff was a "chronic violator" did not alter the procedure for him to file grievances. (Tr. at 24.)

On the other hand, when an inmate is charged with violating a prison rule, he is administratively charged and given a hearing. (Tr. at 49-50.) The prohibited acts that result in a disciplinary charge are listed in the Inmate Handbook. (*Id.* at 50.) Plaintiff had multiple disciplinary matters in his file. (Tr. at 51.)

ACJF Deputy Warden Bruce Carber also testified on behalf of Defendants. The Inmate Handbook states that inmates will not receive reprisals for filing grievances, and ACJF has not had any issues with reprisals occurring when resolution forms or grievances are filed. (Tr. at 65.) The decision to use mechanical restraints on an inmate is not part of a classification status. (*Id.*) Thus, an inmate is able to file a grievance about the use of mechanical restraints. (Tr. at 66.)

For a period of Plaintiff's detention in ACJF, he was housed in the work pod [also referred to in testimony as the worker's unit], where inmates have privileges to work outside the pod during the day. (Tr. at 68-69.) According to Lieutenant Robinson, inmates in the worker's unit are allowed to assist in monitored cleaning details within the jail, for which they receive work credits. (Tr. at 26.) Deputy Warden Carber testified that because there is no time limit for filing an inmate resolution form, Plaintiff could have exhausted his administrative remedies about the

8

alleged misuse of mechanical restraints after he was placed in the work pod. (Tr. at 68-69.)

Plaintiff also testified. Plaintiff has a high school education. (Tr. at 95.) Plaintiff admitted he read ACJF's Inmate Handbook "multiple times" and understood it. (*Id.*) Critically, Plaintiff understood that not only did he understand the "entirety of the inmate handbook," *id.* at 96, he understood that disciplinary actions could not be grieved and that disciplinary actions were those for which an inmate was issued a "blue sheet." (Tr. at 97.) As Plaintiff testified:

> Q. You said you understood all of the entirety of the inmate handbook, correct?
>
> A. Yes, I did.
>
> Q. So if an inmate handbook said certain matters may not be grieved, how would you understand that?
>
> A. There was nothing I could do about the situation.
>
> Q. And the inmate handbook says disciplinary actions may not be grieved; is that correct?
>
> A. Correct. Correct.
>
> Q. How would you define or what do you think is a disciplinary action?
>
> A. As far as -- what do you mean, as far as?
>
> Q. A disciplinary action taken against you while you were detained in Atlantic County Jail.
>
> A. I don't understand the question.
>
> THE COURT: How did you understand disciplinary action? How did you understand disciplinary action taken against you?

9

> THE WITNESS: Though they would issue a piece of --
> a blue sheet they call it, and it would have your charges on there, and then you would sign "guilty" or "not guilty," and then you could appeal it if you were found guilty.

(Tr. at 96-97 *see also,* Tr. at 102):

> THE COURT: And by the discipline actions, you're talking about the blue slips?
>
> THE WITNESS: Yes. Yes.
>
> THE COURT: Or the charges.
>
> THE WITNESS: That's correct.
>
> THE COURT: The charges that get filed against you.
>
> THE WITNESS: Right.
>
> THE COURT: Okay.

The evidence established that during his time in custody, Plaintiff was, in fact, charged with disciplinary acts.

During the hearing it became clear to the Court that Plaintiff understood and was aware that he was in mechanical restraints because of the security concerns the prison had. For example, Plaintiff testified:

> Q. Did you ever at any time ask them to remove you from restraints while you were being checked by them?
>
> A. Multiple times.
>
> Q. And do you recall the responses you received?
>
> A. Some of the responses were "I'm not ready" or "it will happen soon," things like that.

10

>Q. And when you were told -- when you say, "I am not ready," they're referring to you as not being ready, correct?
>
>A. Yes, yes.
>
>Q. So when an officer told you that you were not ready, what did you understand that to mean?
>
>A. I just assumed that they didn't feel safe or comfortable with me, being the previous things that have happened.

(Tr. at 98.)

Plaintiff further testified:

>Q. How many interactions did you have with Captain Carber?
>
>A. Many, several. He always came and checked on me and talked to me and told me about progress, and I saw him a lot, a lot. He came in and checked on me a lot.
>
>Q. When he told you about progress, were you in restraints at that point in time?
>
>A. Yes.
>
>Q. And did he explain to you progress while you were in restraints?
>
>A. He said due to my extreme behavior, I was going to be in them for a long time.
>
>Q. There wasn't any --
>
>A. There was no set date. It was just -- it was just based on what he -- what the administrative staff decided.
>
>Q. Did he give you goals to reach in order to be removed from the restraints?
>
>A. He would give me books and activities to do and things like that and to help me with the boredom and aggravation. He was pretty compassionate mostly.

11

(Tr. at 100-01.)

Thus, this Court finds that Plaintiff understood that because the use of restraints was not a disciplinary action, the Inmate Handbook required him to file a grievance in accordance with the prison's procedures.

In defense of his failure to follow the grievance procedure, that is exhaust his administrative remedies, Plaintiff testified that he feared retribution if he filed a grievance:

> THE COURT:  I'm asking you why you -- when you weren't -- okay. Help me understand your testimony. Your testimony is that when you were in restraints, you couldn't ask for a form or you did ask for a form?
>
> THE WITNESS:  Correct, I did. But I was never given one. And I was also fearful of what would happen if I did file a complaint.
>
> THE COURT:  You were fearful of what?
>
> THE WITNESS:  Retribution, of what would happen, like retaliation, if I was going to be punished for that.
>
> THE COURT:  And what did you think was going to happen?
>
> THE WITNESS:  I thought they would leave me in there longer or keep me segregated longer.
>
> THE COURT:  You did file forms after that, right?
>
> THE WITNESS:  Correct.
>
> THE COURT:  So it's only when you were in that you –
>
> THE WITNESS: In the restraints, yeah.

(Tr. at 118-19.)

When the Court further questioned Plaintiff as to why he did not file a grievance after he was out of restraints, he testified that it "wasn't relevant at that time because I wasn't in restraints anymore." (Tr. at 118.) When further questioned by the Court, Plaintiff testified:

> THE COURT: But you knew that you could grieve the fact that you had been in restraints, you just chose not to once you were out of restraints; is that it?
>
> THE WITNESS: I just -- I didn't know if I could or couldn't.
>
> THE COURT: What do you mean?
>
> THE WITNESS: I didn't know you could grieve previous things that happened.
>
> THE COURT: Well, when -- you understood that you have to grieve them as they're happening?
>
> THE WITNESS: That's what my assumption was, yes.
>
> THE COURT: You assumed it, but is that in the handbook anywhere; that you relied on that? Did anyone tell you that?
>
> THE WITNESS: No.
>
> THE COURT: No one told you; you just assumed that?
>
> THE WITNESS: I just assumed that.
>
> THE COURT: So at no point when you were out of restraints did you ever ask a corrections officer, or anyone for that matter, can I have a form, I want to file a grievance?
>
> THE WITNESS: I was fearful of what -- like from when all the disciplinary action was going on, I was fearful that that would happen again if I brought those things up again.
>
> THE COURT: If you brought the past up?

13

> THE WITNESS: Right.
>
> THE COURT: And you were fearful of what?
>
> THE WITNESS: Being placed back in restraints, or being segregated, or loss of commissary, or something of that nature.

(Tr. at 118-19.)

The Court finds Plaintiff's testimony that he was fearful of retribution not credible. Nor does the Court find credible Plaintiff's assumption that he could no longer grieve after he was out of the restraints. Even so, this assumption has no basis in ACJF's inmate resolution process. "[I]nmates must properly exhaust administrative remedies per the prison's grievance procedures . . . [b]ut '[w]hen an administrative process is susceptible [to] multiple reasonable interpretations, ... the inmate should err on the side of exhaustion.'" *Downey*, 968 F.3d at 305 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016.)) The inmate resolution process is described in the Inmate Handbook, which Plaintiff admittedly read and understood.

## IV. CONCLUSION

For the reasons discussed above, this Court finds that Plaintiff failed to exhaust his administrative remedies under the PLRA. The Court will grant Defendants' motion for summary judgment.

An appropriate Order follows.

Date: **June 20, 2024**

                                      s/Renée Marie Bumb
                                      **RENÉE MARIE BUMB**
                                      **Chief United States District Judge**